JOHN WIESE V. STATE OF NEBRASKA.

294 N. W. 482

FILED NOVEMBER 8, 1940. No. 30877.

*Grenville P. North,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

In a prosecution by the state of Nebraska in the district court for Cass county, John Wiese, defendant, was prosecuted for violating the statute which provides that, whoever steals any chickens or other poultry of any value "shall for the first offense be imprisoned in the county jail not less than ten days nor more than six months or in the state penitentiary for not more than one year; and for a second or subsequent offense, such person or persons so offending shall be deemed guilty of felony, and, upon conviction thereof, shall be imprisoned in the state penitentiary for not more than five (5) years nor less than one (1) year." Comp. St. 1929, sec. 28-524.

The first count of the information charged that defendant, in Cass county, Nebraska, on or about April 29, 1939, "unlawfully and feloniously did steal, take and carry away about 36 chickens of value, the personal property of John Blotzer, without the consent of the said John Blotzer, the owner thereof, and against his will, and that the said defendant, John Wiese, was arrested and convicted of chicken stealing on or about October 16th, 1935, in the county of Cass, state of Iowa, and committed to the state penitentiary at Fort Madison, Iowa, for five years, and that the charge herein alleged is for the second or subsequent offense of chicken stealing."

In similar form the information contained a second count in which defendant was charged with stealing in Cass county, Nebraska, May 1, 1939, about 37 chickens belonging to Arthur Rough. The former conviction for chicken stealing in Cass county, Iowa, was also charged in the second count in the form alleged in the first count.

Defendant, by general demurrer, challenged the sufficiency of the information to charge him with an offense punishable under the laws of Nebraska. The demurrer was overruled and afterward defendant presented a formal motion to quash the information, which was also overruled. A plea of not guilty followed and upon a trial the jury found defendant guilty on each count for the first offense of chicken stealing in Nebraska. On that verdict defendant was sentenced to serve one year in the penitentiary for each offense, the sentences to run concurrently. As plaintiff in error defendant presents for review the record of his conviction.

In the trial court it was urged by general demurrer that the facts stated in the first and second counts of the information did not constitute an offense punishable under the laws of Nebraska and the overruling of the demurrer is assigned as error. In this connection it is urged further that the Nebraska statute does not authorize punishment for an offense committed in another state. The information charged in direct terms every element of chicken stealing

defined by the Nebraska statute as shown by the language already quoted therefrom. The information was not invalidated by the additional allegation that defendant had been convicted of chicken stealing in Iowa in 1935 and committed to the penitentiary in that state. The sole purpose of that allegation was to increase the penalty for the "second or subsequent offense." Convictions in Nebraska for both offenses are not required by statute as conditions of an increase in penalty. The former conviction must be charged in the information for a second offense, if the penalty therefor is increased. *Osborne v. State,* 115 Neb. 65, 211 N. W. 179. The law has been stated thus:

"Where the statute authorizes an increased penalty upon a second or subsequent conviction, the record of the former conviction in the proper court is, of course, admissible to establish such conviction." *Burnham v. State,* 127 Neb. 370, 255 N. W. 48.

It follows that the information charging chicken stealing was sufficient as against the general demurrer.

The information was attacked by motion to quash after the demurrer was overruled. This point seems to be without merit. The criminal law provides:

"A motion to quash may be made in all cases, when there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which an offense is charged." Comp. St. 1929, sec. 29-1807.

What defendant regarded as defects in the information were such as appeared on the face of the record before he filed his demurrer or procured the ruling thereon. His remedy for such, if any, was available to him in the first instance by motion to quash but defects were waived by his demurrer. The Criminal Code provides:

"The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar or the general issue." Comp. St. 1929, sec. 29-1811.

There is also a statutory rule that no indictment shall be deemed invalid "for any surplusage or repugnant allega-

tion when there is sufficient matter alleged to indicate the crime or person charged." Comp. St. 1929, sec. 29-1501. According to statute and established rules of court, therefore, the overruling of the motion to quash was free from error. The defenses and legal rights of accused were available to him under his plea of not guilty. Moreover, the jury did not find that he had been convicted of a former offense in Iowa. An increase in the penalty for the first offense was not imposed. There was no error prejudicial to defendant in the preliminary proceedings.

The principal question for review arises on the sufficiency of the evidence to prove defendant guilty of chicken stealing beyond a reasonable doubt as charged in the information. No witnesss saw him at or near the scene of either offense at the time and place charged or in possession of the chickens. The state relies on circumstantial evidence to establish the conviction.

The testimony of the owners of the chickens, 'of the sheriff and his deputy and of other witnesses for the state may be summarized in part as follows: During the morning of April 30, 1939, the chickens owned by John Blotzer were counted as they were let out of the coop and 36 of them, "White Rocks," were missing. The sheriff was notified of the loss, went to the Blotzer place with his deputy the same day and examined the chicken coop and the surroundings. The officers and others observed tracks or shoe prints of two different sizes at the door of the coop. Some of the prints had been made by small shoes and others by large, wide shoes. A rubber heel on a large shoe distinctly showed the brand "U. S." These heel prints were further identified by a ridge around nail holes and by cross bars. They left distinct impressions in dry dust at the chicken coop. The tracks were observed and traced in soft plowed ground and in bare spots in an alfalfa field and across fences to a public highway where impressions of four different kinds of automobile tires on a single car showed in soft earth by the roadside. The heel prints, prints of burlap, tire prints and the condition of the ground on which the

impressions were made were minutely described by witnesses. White feathers were found where the car had stood.

May 2, 1939, chickens owned by Arthur Rough were counted as they came out of the coop on his farm west of Murray, in Cass county, Nebraska, and 37 of them were missing. The sheriff and his deputy came to the premises later the same day and discovered, near the coop, heel prints like those observed and traced on the Blotzer farm. The trail from Rough's coop was followed to a hay meadow and lost where tire prints like those observed at the roadside April 30, 1939, were found.

At night, May 2, 1939, the sheriff and his deputy, while in a car without lights, followed, at some distance, another car about two miles until the lights on it were turned off. It left the highway, went into a wheat field, and stopped beside a strawstack. The officers followed, surprised the two occupants of the first car and found them with sacks in their hands. One of the men ran toward the car and the deputy fired a shot through the car door without hitting him. The other man ran around the stack, refused to halt when ordered to do so and was shot in the leg, falling to the ground. Both suspects were arrested. The wounded man was taken to a hospital in Weeping Water and afterward to a hospital in Omaha. He is the defendant herein. From his foot a large wide shoe with a rubber heel was removed, preserved and introduced in evidence at the trial. This shoe bore on the heel the brand "U. S.," the ridge around the nail holes and the cross bar. Charley Wheeler was owner of the car and the companion of defendant at the time of the arrests. The tires were removed from the wheels, preserved and introduced in evidence. The distinguishing features of the tire treads corresponded to the four tire prints at the ends of the trails leading from the chicken coops. The evidence of the thefts and the chain of circumstances outlined were sufficient to prove the guilt of defendant beyond a reasonable doubt.

Defendant called his sister as a witness to prove he was

in Omaha, where he roomed and boarded, when the chickens were stolen, but her testimony on the defense of alibi is not convincing, when the heel tracks at the chicken coops and his arrest at the strawstack are considered. In his own behalf defendant testified that he went to the haystack to respond to a call of nature and that he did not steal the chickens. The jury, however, were judges of the facts and found otherwise on sufficient evidence.

It was argued by counsel for defendant that the trial court gave erroneous instructions to the jury and refused to give necessary instructions requested. An examination of the entire charge to the jury shows that the substance of requested instructions properly stating the law was inserted in those given by the trial court. An instruction that defendant could not be convicted on circumstantial evidence, unless the circumstances established were such as to exclude every reasonable hypothesis except his guilt, was not given in the usual form, but the rule of law thus stated was distinctly given in different language. Every right of defendant was carefully guarded in the instructions as a whole. Prejudicial error in the proceedings and the judgment below has not been found in the record.

AFFIRMED.